# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| ASFA International Construction Industry | ) | ASBCA No. 57880 |
| and Trade, Inc. | ) | |
| | ) | |
| Under Contract No. FA5685-05-C-0004 | ) | |

APPEARANCE FOR THE APPELLANT:     D. Lee Toedter, Esq.
      Attorney at Law & Contract Consultant
      Orange Beach, AL

APPEARANCES FOR THE GOVERNMENT:     Col Robert J. Preston II, USAF
      Acting Air Force Chief Trial Attorney
      W. Michael Rose, Esq.
      Senior Trial Attorney
      Gregory A. Harding, Esq.
      Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MELNICK ON BOARD JURISDICTION AND APPELLANT'S MOTION FOR SUMMARY JUDGMENT

This appeal arises from ASFA International Construction Industry and Trade, Inc.'s (ASFA's or appellant's) timely appeal of a contracting officer's (CO's) final decision (COFD) assessing liquidated damages for late completion of the construction of three environmental facilities at Incirlik Air Base, a Turkish Air Force installation, in Adana, Turkey. ASFA now moves for summary judgment asserting that the government improperly assessed liquidated damages because the government waived the scheduled completion dates for each facility. The Board raised the issue of its jurisdiction, *sua sponte*.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The 39th Air Base Wing of the Department of the Air Force (Air Force or government) awarded Contract No. FA5685-05-C-0004 (contract) to ASFA[1] on 11 May 2005 to complete construction of three partially constructed environmental facilities – a hazardous materials storage (HAZMAT) facility, a hazardous waste

---

[1] The contract was originally awarded to ASFA Insaat Pazarlama (1st R4, tabs 4, 6); however, by novation under Modification No. A00002, the contractor's name was changed to ASFA International Construction Industry & Trade (1st R4, tab 6).

storage facility (storage), and a pesticide management facility (pesticide) – at Incirlik Air Base in Adana, Turkey (1ˢᵗ R4,[2] tab 4 at 2-5, 15-19 of 31[3]). Contract line item number (CLIN) 0001 was for the construction of the pesticide facility, CLIN 0002 was for the construction of the storage facility, and CLIN 0003 was for the construction of the HAZMAT facility (1ˢᵗ R4, tab 4 at 4-5 of 31).

2. The contract included the following pertinent Federal Acquisition Regulation (FAR) clauses by reference: 52.233-1, DISPUTES (JUL 2002); 52.232-5, PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (SEPT 2002); and 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) (1ˢᵗ R4, tab 4 at 12-13 of 31). The contract also included the following pertinent FAR clauses in full text: 52.211-10, COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984); and 52.211-12, LIQUIDATED DAMAGES – CONSTRUCTION (SEPT 2000) (1ˢᵗ R4, tab 4 at 13-14 of 31).

3. FAR clause 52.232-5, PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (SEPT 2002) provides the following, in part:

> (b) *Progress payments.* The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer.

4. Under contract clause FAR 52.211-10, COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984), the storage facility was to be completed no later than 131 calendar days from the date of the notice to proceed (NTP); the pesticide facility was to be completed no later than 152 calendar days from the date of the NTP;

---

[2] The government submitted its Rule 4 files in six separate hard copy submittals. The first submittal was for ASBCA No. 57773, which is ASFA's related appeal. The second submittal was for this appeal. ASBCA No. 57773 and this appeal were consolidated (ASBCA No. 57880, Bd. notice of docketing dtd. 13 December 2011). The third, fourth, fifth, and sixth submittals were submitted for the consolidated appeals. This Opinion only involves matters relating to ASBCA No. 57880. Citations to documents in the Rule 4 files in this Opinion will be identified by the following: the first submittal will be identified as "1ˢᵗ R4," the second submittal as "2ⁿᵈ R4," and so forth.

[3] The government also submitted copies of its six Rule 4 file submittals with "Bates numbered" pages on compact discs. The Rule 4 file documents submitted in paper copies are not "Bates numbered." For the purposes of this Opinion, page number citations in the Rule 4 file are to the "Bates numbered" pages.

and the HAZMAT facility was to be completed no later than 218 calendar days from the date of the NTP (1st R4, tab 4 at 13-14 of 31; gov't opp'n at 11, ¶ 15; app. reply at 7, ¶ 15).

5. The Liquidated Damages clause states the following, in part:

> (a) If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of **$276.87** for the first day and **$255.72** for each calendar day of delay until the work is completed or accepted. The above amounts will be assessed separately for each project in which the work is delayed until the work is completed or accepted (i.e., CLIN 0001, CLIN 0002, CLIN 0003).

(1st R4, tab 4 at 14 of 31)

6. By memorandum dated 28 June 2005, the government issued a NTP to ASFA to begin performance under the contract stating the following, in part:

> 1. Pursuant to the terms and conditions of Contract Number FA5685-05-C-0004, you are hereby notified to proceed with the work. Performance shall commence within 10 calendar days after receipt of this notice. This is your Notice to Proceed to start actual performance on the contract. Entire work required by the contract shall be completed not later than 218 calendar days after receipt of this Notice to Proceed.

ASFA acknowledged receipt of the NTP on the same day. (1st R4, tab 14)

7. After issuance of the NTP, the contract's scheduled completion dates for the three facilities were the following:

| Facility | Contract Completion Date |
|----------|--------------------------|
| Pesticide | 27 November 2005[4] |
| Storage | 6 November 2005 |
| HAZMAT | 1 February 2006 |

(Gov't opp'n at 11, ¶ 15; app. reply at 7, ¶ 15)

8. ASFA failed to complete construction of the storage and pesticide facilities by the contract completion dates (gov't opp'n at 11, ¶ 16; app. reply at 7, ¶ 16). The storage facility was 12 percent complete by the contract completion date. The pesticide facility was 21 percent complete by the contract completion date. (Gov't opp'n at 15-16, ¶¶ 30, 31; app. reply at 11, ¶¶ 30, 31)

9. By email dated 9 March 2006, CO Cummins, following up on an earlier meeting between the parties, stated that "it is at the [CO's] discretion whether or not to assess liquidated damages. At this time, I have not made a CO decision whether to assess or not assess liquidated damages…." (Gov't opp'n, CO Cummins decl., attach. 1 at 1 of 10) In addition, CO Cummins also attached a spreadsheet for informational purposes "so [ASFA is] fully aware of the liquidated damages (LD) figures I have calculated for each of the above projects at this time as well as my methodology for arriving at these LD figures" (id.). The spreadsheet purported to project liquidated damages through 31 May 2006 for each facility (id. at 3-9 of 10).

10. CO Cummins' 9 March 2006 email also requested letters from ASFA communicating the planned end dates for each facility, the number of additional days requested to complete construction for each facility, and justification for the requested additional days (gov't opp'n, CO Cummins decl., attach. 1 at 3-9 of 10). CO Cummins stated that he would consider the additional days requested by ASFA and they may or may not be included in the modification that the parties were discussing (id. at 1 of 10).

11. Between 2006 and 2007, the parties entered into discussions and negotiations concerning time extensions, schedules, and other work items during ASFA's continued performance (1st R4, tab 21 passim; 2nd R4, tab 2 passim).

---

[4] In their briefs, the parties stipulated that the contract completion date for the pesticide facility was 26 November 2005. The Board finds that the contract completion date for the pesticide facility was 27 November 2005, 152 calendar days from the date of the NTP.

12. By email dated 10 August 2006 with the subject line "RE: DURATION CALCULATION REGARDING ALL THREE PROJECTS," CO Moss stated the following, in pertinent part:

> It is unfortunate that you haven't produced the required information in time for today's meeting. I have to [sic] choice but to assume the calculations provided to me by CE are correct, as of this point you have no counter-information. According to my calculations, the total liquidated damages for these projects is now at approximately $130,000 (as of 10 Aug 06)[.]
>
> Because you haven't provided your information/documentation, we cannot proceed with negotiations. Without the negotiations, the subsequent modification can not take place. Also, this will show as a continued delay by ASFA, which in turn adds to the already accumulating liquidated damages.
>
> It is in your best interested [sic] to expedite your "delayed days" calculation and documentation as soon as possible.

(App. mot., attach. 2 at 16 of 41) Further correspondence between the parties in August and September 2006 included government requests for meetings to discuss modification items and liquidated damages (*id.* at 22-28, 30, 32 of 41). By email dated 28 September 2006, the government stated the following, in pertinent part: "[W]e are waiting for the contractor's decision in regards to the modification and [liquidated damages]" (1st R4, tab 21 at 163 of 269; gov't opp'n at 12, ¶ 19; app. reply at 8, ¶ 19).

13. By letter dated 16 October 2006,[5] ASFA informed the government that it would not agree to the modification package and liquidated damages discussed during negotiations stating the following, in pertinent part:

> We hereby would like to inform you that ASFA is not accepting your proposal which had been done during ref a) which is: To perform all the work items included in the MOD packages discussed during several meetings up today against the [liquidated damages] calculated as per ref b) since ASFA is not accepting [liquidated damages] and is

---

[5] The letter references a 20 September 2006 meeting and a 21 October 2006 email. Since the letter is dated 16 October 2006, we conclude that the latter is a typo, and the letter is most likely referencing a 21 September 2006 email.

asking for review of our files and the evaluation of the causation of delayed performance and possible equitable adjustment for correction of errors and omissions inherited with the project from the prior performance effort and compensation of additionally [sic] not in original contract included work items.

(1st R4, tab 21, encl. 6 at 169 of 269)

14. The parties eventually executed Modification No. P00002, effective 20 April 2007. The modification added CLIN 0005, funding changes to the specifications, removing certain work items for the HAZMAT facility, and authorizing payment to ASFA for missing government furnished property purchased by ASFA. (1st R4, tab 9 at 1-2 of 7)

15. Modification No. P00003, effective 17 May 2007, was bilaterally executed to extend the period of performance for the HAZMAT facility by 84 calendar days, accommodating changes incorporated under Modification No. P00002. The modification also included ASFA's reservation of rights language contained in Modification No. P00002. (1st R4, tab 10) As a result of this modification, the contract completion date for the HAZMAT facility was revised to 26 April 2006. The facility was 75 percent complete as of the revised completion date. (Gov't opp'n at 16, ¶ 32; app. reply at 11, ¶ 32)

16. By memorandum dated 23 November 2011, the CO issued a final decision asserting a government claim for liquidated damages in the total amount of $279,309.69 for ASFA's late completion of the construction of the three facilities under the contract. In his COFD, the CO accepted, as substantially complete, the pesticide facility on 30 June 2006, the storage facility on 18 April 2007, and the HAZMAT facility on 27 April 2007. Liquidated damages for each facility was computed based upon the following: 215 days of liquidated damages for late completion of the pesticide facility; 511 days of liquidated damages for the late completion of the storage facility; and 366 days of liquidated damages for late completion of the HAZMAT facility. Liquidated damages for the storage facility were assessed from 23 November 2005 through 18 April 2007. (2nd R4, tab 1)

17. ASFA timely appealed the 23 November 2011 COFD.

6

DECISION

I.    Jurisdiction

*Sua sponte*, we directed the parties to address whether the Board has jurisdiction to adjudicate this appeal (Bd. corr. ltr. dtd. 6 March 2014). First, we sought briefing on whether the government's claim for liquidated damages for late completion of the storage facility was untimely under 41 U.S.C. § 7103(a)(4)(A) of the Contract Disputes Act (CDA) for being submitted more than six years after claim accrual. Second, we sought commentary about whether ASFA met the jurisdictional prerequisites of the CDA in asserting a waiver defense to the government's claim for liquidated damages in light of *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323 (Fed. Cir. 2010).

   A.  Whether the Government's Claim for Liquidated Damages for Late
       Completion of the Storage Facility is Time-Barred under the CDA

For the government's claim to be timely and cognizable under the CDA, the claim "shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). Timely submission of a claim is a prerequisite for the Board to exercise jurisdiction under the CDA. *Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 793 (Fed. Cir. 2009); *The Boeing Co.*, ASBCA No. 57490, 12-1 BCA ¶ 34,916 at 171,676. FAR 33.201 defines "Accrual of a claim," in pertinent part, as "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known."

As the proponent of its claim for liquidated damages for late completion of the storage facility, the government bears the burden of proving the Board's jurisdiction. *The R.R. Gregory Corp.*, ASBCA No. 58517, 14-1 BCA ¶ 35,524 at 174,111. The 23 November 2011 COFD assessed liquidated damages in the amount corresponding to 511 days for the storage facility, from 23 November 2005 to the government's alleged substantial completion date of 18 April 2007 (SOF ¶ 16), although the contract completion date for the storage facility was 6 November 2005 (SOF ¶¶ 7, 8). The final decision did not explain a rationale behind the assessment based upon the 23 November 2005 date.

The government admits that its storage facility claim accrued on 7 November 2005, and we agree (gov't br. on statute of limitations at 2, 8). That is the date when the alleged liability for late completion was known or should have been known. As such, the government's 23 November 2011 claim for liquidated damages was asserted more than six years after the claim accrued. Nevertheless, the government argues that the "continuing claim" doctrine permits it to assert its claim from 23 November 2005, which falls within the six-year limitation period (*id.* at 2, 7-8). The government argues

7

that each day of delay created a separate and distinct event or wrong with its own associated damages. The government cites to our decisions in *Gray Personnel, Inc.*, ASBCA No. 54652, 06-2 BCA ¶ 33,378; *DynCorp International LLC*, ASBCA No. 56078, 09-2 BCA ¶ 34,290; and *Fluor Corp.*, ASBCA No. 57852, 14-1 BCA ¶ 35,472, as support. ASFA counters that the liability became fixed by the single event of ASFA's failure to complete performance by the scheduled completion date, and any subsequent late days were continuing ill effects (app. resp. to gov't br. on statute of limitations at 5-6).

Under the "continuing claim" doctrine, portions of the claim within the statutory limitation period can survive although the statute of limitations has lapsed for earlier events. *Ariadne Financial Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998). For the government's claim to be a continuing claim, the claim "must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." Furthermore, "a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim." *Gray Personnel*, 06-2 BCA ¶ 33,378 at 165,476-77 (citing *Brown Park Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997)).

*Gray Personnel* involved a personal services requirements contract in which the government's potential liability for making constructive changes to the performance requirement was not fixed until the issuance of delivery orders. *Gray Personnel*, 06-2 BCA ¶ 33,378 at 165,476. In *DynCorp*, the contractor's equitable adjustment claim as to the option periods was a continuing claim because the option periods were separately awarded by the government, and if the government exercised no additional option periods, there would be no claim for those years. *DynCorp*, 09-2 BCA ¶ 34,290 at 169,407. In *Fluor*, we denied appellant's motion to dismiss the government's claims over CAS non-compliance cost accounting practices as untimely because "the government...could not know at that time, much less submit a CDA claim for, the increased cost of those practices to the government work over the next seven years until that work was performed, billed, and paid." *Fluor*, 14-1 BCA ¶ 35,472 at 173,929. In each of these decisions, we found the underlying claims to be continuing.

The government fails to establish how each late day here is an independent, distinct event having its own associated damages. ASFA was required to complete performance of the construction of the storage facility by 6 November 2005. ASFA's failure to deliver by the scheduled date fixed ASFA's liability. The claim accrual date was 7 November 2005. On that date, the government incurred "some injury" and ASFA was liable for liquidated damages under the clause. *Gray Personnel*, 06-2 BCA ¶ 33,378 at 165,476. Unlike our previous decisions in *Gray Personnel*, *DynCorp*, and *Fluor*, no other performance or contingency was necessary to fix liability. Once

8

ASFA failed to meet its obligations, the government had the right to assess liquidated damages under the contract. Subsequent days until substantial completion of the storage facility were damages accumulating and, therefore, continuing ill effects. *See Ariadne*, 133 F.3d at 879 (no continuing claim where each denial of the use of an asset did not rise to a separate cause of action and flowed from the original repudiation by the government); *Hart v. United States*, 910 F.2d 815, 818 (Fed. Cir. 1990) (death of widow's husband was single event necessary to fix liability of the government for husband's military annuity benefits paid in monthly installments after his death and therefore not a continuing claim). It is not necessary for the total costs of the liability to be incurred; rather once a party is on notice that it has a potential claim, the statute of limitations can start to run. *Gray Personnel*, 06-2 BCA ¶ 33,378 at 165,476.

For the reasons discussed above, the government's claim is not a continuing claim. Since the claim accrual date was 7 November 2005, and the government asserted its claim more than six years after the accrual date, the government's storage facility claim is untimely under the CDA, and we lack jurisdiction to adjudicate that portion of this appeal.

B. Whether the Board has Jurisdiction to Entertain ASFA's Affirmative Defense of Waiver

We next determine whether, under *Maropakis*, ASFA has met the jurisdictional prerequisites under the CDA to assert the affirmative defense of waiver. In *Maropakis*, the government counterclaimed for liquidated damages against the contractor for late performance. The contractor's defense to the government's assessment was based on a letter it sent to the CO requesting time extensions. *Maropakis*, 609 F.3d at 1326-27. After determining that the letter was not a valid CDA claim, the court also held that the contractor could not defend against the government's claim based on its request for contract modification because "a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim or *as a defense to a government action*." *Id.* at 1330-31 (emphasis added).

ASFA asserts that the government waived the scheduled completion dates for the late completion of the pesticide and HAZMAT facilities. ASFA argues that we have jurisdiction because the government submitted a CDA claim against ASFA, and ASFA timely appealed to the Board within the CDA's appeal period (app. br. on *Maropakis* at 6). Likewise, the government also agrees that we have jurisdiction to hear both the government's claim and ASFA's affirmative defense, because ASFA asserted defenses of excusable delay when it submitted a November 2007 equitable adjustment claim to the CO which was denied in a 1 July 2011 COFD (gov't resp. to app. br. on *Maropakis* at 7-8). ASFA has appealed the 1 July 2011 COFD which is

currently docketed before the Board as ASBCA No. 57773 (Bd. notice of docketing dtd. 12 September 2011), and consolidated with this appeal (Bd. notice of docketing dtd. 13 December 2011).

We agree that *Maropakis* did not require ASFA to submit a CDA claim contending the government waived its right to liquidated damages before it could pursue that defense here. *Maropakis* requires contractors to submit CDA claims to the CO as a prerequisite to their "seeking an adjustment of contract terms," regardless of whether the claim is asserted "as an affirmative claim or as a defense to a government action." *Maropakis*, 609 F.3d at 1331; *see also ERKA Construction Co.*, ASBCA No. 57618, 12-2 BCA ¶ 35,129 at 172,474 (limiting *Maropakis'* claim mandate to defenses seeking contract modifications). Liquidated damages are simply the damages the parties fix to be paid in case of a breach, saving the time and expense of litigation. *DJ Manufacturing Corp. v. United States*, 86 F.3d 1130, 1133 (Fed. Cir. 1996). ASFA's defense that the government waived both the completion dates and its right to collect liquidated damages does not seek an adjustment or modification of the contract terms; it simply maintains the government waived rights already granted by the contract. Nothing in *Maropakis* requires the submittal of a CDA claim before such a defense can be advanced. Thus, we may entertain ASFA's defense of waiver.

II. Disposition of ASFA's Motion

A. Legal Standard

Summary judgment is properly granted if it is shown that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one which may make a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences are drawn in favor of the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

B. Contentions of the Parties

In its motion, ASFA contends that there are no material facts in dispute and ASFA should be entitled to judgment as a matter of law because unusual circumstances are present and the government waived the scheduled completion dates for each facility under the doctrine enumerated in *Devito v. United States*, 413 F.2d 1147 (Ct. Cl. 1969) (app. mot. at 21). To support its contention of waiver, ASFA asserts that the government failed to mention that ASFA would be subject to a default termination or assessment of liquidated damages after the original contract completion dates had passed, and the government was required to reestablish new completion dates pursuant to the Default clause in the contract. The "substituted" completion dates for all three facilities were the dates upon which ASFA completed performance.

10

ASFA argues that it incurred additional costs resulting from continued performance with the government's knowledge. Lastly, ASFA argues that the assessment of liquidated damages was arbitrary and capricious because the government's assessment occurred approximately 4½ years after the government's acceptance of the last completed facility. (*Id.* at 19-22)

The government opposes the motion, contending that there are material facts in dispute, and ASFA has failed to show that the government waived its right to assess liquidated damages (gov't opp'n at 20). The government argues that both parties were aware of the potential assessment of liquidated damages and points to the 9 March 2006 email from CO Cummins and subsequent discussions between the parties (*id.* at 23).

In its reply, ASFA contends that discussions subsequent to the 9 March 2006 email did not bring closure on the liquidated damages issue and there was no indication by the government that it was intending to assess liquidated damages (app. reply at 17, 22-23).

C. Discussion

ASFA contends that the "waiver" doctrine in *Devito* is controlling. In *Devito*, the elements required for establishing waiver of the government's right to terminate the contract for default are the government's: "(1) failure to terminate within a reasonable time after the default under circumstances indicating forbearance, and (2) reliance by the contractor on the failure to terminate and continued performance by him under the contract, with the Government's knowledge and implied or express consent." 413 F.2d at 1154. With fixed delivery dates in the contract which have passed, "the inference is created that time is no longer of the essence so long as the constructive election not to terminate continues and the contractor proceeds with performance." *Id.* Time does not become of the essence again until establishment of a new completion date. *Olson Plumbing and Heating Co.*, ASBCA Nos. 17965, 18411, 75-1 BCA ¶ 11,203 at 53,336, *aff'd*, 602 F.2d 950 (Ct. Cl. 1979); *Brent L. Sellick*, ASBCA No. 21869, 78-2 BCA ¶ 13,510 at 66,194.

Both parties acknowledge that *Devito*, which involved a supply contract, is rarely applicable in construction contracts because the contractor will receive payment for work completed past the specified completion date, and the government can seek liquidated damages for late completion under the relevant clauses. Thus, detrimental reliance would be difficult to prove merely from a period of government forbearance and continued contractor performance. *Olson*, 75-1 BCA ¶ 11,203 at 55,336; *Sellick*, 78-2 BCA ¶ 13,510 at 66,194-95; *Corway, Inc.*, ASBCA No. 20683, 77-1 BCA ¶ 12,357. To the extent *Devito* has been applied to waive the scheduled completion dates for assessing liquidated damages or the right to terminate for default in

11

construction cases, its usage is generally limited where "unusual circumstances" were found to exist. *See Technocratica*, ASBCA No. 47992 *et al.*, 06-2 BCA ¶ 33,316.

It is undisputed that ASFA missed the scheduled completion dates, continued performance past the scheduled completion dates, and completed construction of all three facilities (SOF ¶ 16). However, with construction contracts, "[g]overnment encouragement to expedite completion during a forbearance period should not be interpreted as a disestablishment of the contractually-prescribed completion date absent further manifestation by the [g]overnment that it no longer considered that date to be enforceable." *Sellick*, 78-2 BCA ¶ 13,510 at 66,195. In determining whether "unusual circumstances" exist, the government's failure to mention or assess liquidated damages was an indicator that time was no longer of the essence in the contract, and the scheduled completion dates were no longer enforceable for assessing liquidated damages. *See Technocratica*, 06-2 BCA ¶ 33,316 at 165,188; *Corway*, 77-1 BCA ¶ 12,357 at 59,804 (government never mentioned or assessed liquidated damages and showed no urgency in resolving problems); *Overhead Electric* Co., ASBCA No. 25656, 85-2 BCA ¶ 18,026 at 90,473; *JEM Development Corp.*, ASBCA No. 42872, 92-1 BCA ¶ 24,709 at 123,339 (during two-week period where contractor left the work site, the government did not communicate any intention it was going to assess liquidated damages if work was not completed by completion date); *D&S Roofing Co.*, ASBCA Nos. 28130, 29109, 85-2 BCA ¶ 18,114 at 90,947 (government approved substituted schedule without manifesting intent to maintain original schedule).

The record shows at least three instances that suggest the government made ASFA aware of the potential assessment of liquidated damages. The 9 March 2006 email from CO Cummins (SOF ¶¶ 9, 10), the 10 August 2006 email from CO Moss (SOF ¶ 12), and other correspondence from the government between August and September of 2006 (SOF ¶ 12) specifically mention, at a minimum, the possible assessment of liquidated damages. Additionally, ASFA's 16 October 2006 letter indicates that ASFA was aware of the government's position regarding liquidated damages as it informed the government that it would not be accepting liquidated damages (SOF ¶ 13). This evidence contradicts ASFA's assertion that the government did not issue any notices or communications regarding the assessment of liquidated damages, and establishes a genuine issue precluding summary judgment.

Lastly, ASFA argues that the assessment of liquidated damages was arbitrary and capricious because the assessment was approximately 4½ years after the last facility was accepted, and after ASFA had filed its appeal under ASBCA No. 57773. The burden is on ASFA to prove the CO's assessment was arbitrary and capricious. It is presumed the CO acts in good faith. *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002). ASFA's bald accusations that the liquidated damages assessment was later than it thinks it should have been do not

overcome the presumption of good faith. Therefore, we deny ASFA's motion to the extent it claims the assessment was arbitrary and capricious.

## CONCLUSION

The government's claim for liquidated damages for late completion of the storage facility is time-barred under the CDA. ASFA's motion for summary judgment as to the government's claim for liquidated damages for late completion of the pesticide and HAZMAT facilities is denied.

Dated: 2 September 2014

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57880, Appeal of ASFA International Construction Industry and Trade, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals